## 16410
### McCULLEM v. LIBERTY LIFE INS. CO.
(61 S. E. (2d) 181)

566

*Mr. Fred L. Hiers,* of Bamberg, *for Appellant,* 

*Messrs. Kearse & Ness,* of Bamberg, and *Haynsworth & Haynsworth,* of Greenville, *for Respondent,* 

September 18, 1950.

STUKES, Justice.

This action was for damages for alleged wrongful death, Code sec. 411, which resulted from a collision between an automobile driven by the personal defendant, who was the agent of the corporate defendant, and a bicycle ridden by plaintiff's intestate. The latter was a boy nearly ten and in the third grade at school. He had been sent by his mother on an errand to the home of a colored neighbor. The respective homes were each about a quarter of a mile off, and on opposite sides of, heavily traveled U. S. Highway 78, between the towns of Bamberg and Denmark, about two miles from the latter.

The allegations of the complaint were to the effect that Padgett, the personal defendant, was in the scope of his duties as agent of the insurance company defendant when he negligently, carelessly, recklessly and willfully drove the automobile into decedent upon his bicycle and inflicted injuries which caused death, and there were numerous specifications of negligence, etc.. The answer contained a general denial and pleaded sole negligence of plaintiff's intestate and his contributory negligence in specified particulars. The automobile defendant was dismissed on plaintiff's motion at the outset of the trial.

At the conclusion of plaintiff's evidence the defendants moved for nonsuit upon various grounds which included that upon which we think the appeal should be decided. The court refused nonsuit as to the personal defendant but

granted it as to the insurance company for the reason that there was insufficient evidence that the agency of the personal defendant included the operation of the automobile and that the company should not be held liable under the facts shown for any delict thereabout. Plaintiff then asked for nonsuit as against the personal defendant and his counsel stated to the court that he was not interested in a judgment against Padgett alone, and such was ordered over the opposition of the latter's attorneys.

Plaintiff appealed upon exceptions which he has briefed as raising three questions: (1) Was the nonsuit as to the insurance company erroneous? (2) Is the plaintiff without right to appeal from that nonsuit after asking for nonsuit as to the personal defendant? And (3), Was plaintiff's intestate guilty of contributory negligence as a matter of law? The questions overlook respondent's additional grounds to sustain the compulsory order of nonsuit, which preserved the original grounds of it and were inserted in the record pursuant to Supreme Court Rule 4, sec. 7. They include the presently controlling consideration that the evidence adduced was not susceptible of a reasonable inference of negligence, recklessness or willfullness on the part of Padgett, respondent's agent.

The unfortunate accident happened at about or after dark on Feb. 23, 1949. The mother of decedent testified that she sent her son on the fatal errand at about twenty-five minutes past six o'clock after cautioning him then, as always, to be careful, and in ten or twelve minutes her husband came in and said that he had heard the commotion of a wreck on the highway. He went to investigate but his son had already been moved from the scene. A previously passing motorist testified that driving toward Bamberg he saw the boy start into the highway on a bicycle, sounded his horn and the boy stopped, tilted the bicycle and stood on one foot. About the time the witness passed the boy he met two cars, one about 150 feet behind the other. After proceeding a hundred yards or so he heard continuous horn blowing in answer to

which he went back to the scene where there were also a colored woman and child. On direct examination this witness said that the two cars which he met, one of which and inferably the second, Padgett's, collided with the bicycle, quoting, "were running pretty fast, I would say between 60 and 70 miles an hour, one right behind the other." This was rendered worthless for plaintiff by the witness himself, on cross-examination, as follows, quoting again from the record:

"Q. You were going in one direction meeting a car in the other direction and you can testify to the speed? A. I said to my estimation.

"Q. He was making 60 or 70? A. Might not be going over 50.

"Q. Might have been going 40? A. Might have been going 20 or might have been going 90, I don't know."

Plaintiff testified to conversations with Padgett who talked freely to him at the hospital that night and at his home next day, as follows:

"Q. Did you and Mr. Padgett have any conversation? A. Yes, sir, he came to me and said he didn't know it was my child, said he wouldn't have it happen for anything in the world, also said he was running late in a hurry on his way down to Bamberg to pay a claim on some man that got drowned. It didn't interest me at all, I didn't ask him who the man was.

"Q. He told you he was running late down to Bamberg to settle a claim? A. That's right.

"Q. Did he give you any further explanation? A. No, not that night he didn't. The next morning he came to the house pretty early and got to drawing on the ground how the boy run into the side of his car, me and him looked at the car. It was also shown my wife, showing how the bicycle run into the car * * *".

The foregoing testimony has been fully set forth because it is all that is in the record which can possibly be con-

tended to support any of the allegations of negligence. Its insufficiency is further shown by the facts in evidence that the colliding automobile, the bicycle and the body of the boy all came to rest in notably close proximity and the investigating officer who testified was unable after examination of the pavement to find tire skid marks or other evidence of excessive speed or sudden braking. The death wound was a skull fracture. The damage to the bicycle was negligible.

One eyewitness testified for plaintiff. She was the colored woman whose house was off and across the highway about opposite plaintiff's home. She was walking home from Denmark with her small boy and saw decedent enter the highway on his bicycle. One car passed and the second approaching was in collision. Lights were on the automobile, which stopped, quoting, "after it run a little piece." The driver of the automobile, who was the personal defendant, Padgett, asked her the identity of the victim. A Mr. Lee in a "pickup" was stopped by Padgett and they put the boy in the "pickup". As to the speed of the automobile and the bicycle this witness said: "I don't think either one was going fast, I don't think." She was walking on the edge of the pavement and saw the boy come out of the side road "a good piece" from her. Incompetent hearsay is included in the last of her testimony because of ineffective objection, which was to the effect that her son told her he saw decedent run into the side of the automobile as he attempted to cross the highway toward his home.

The witness Lee said it was night when he was driving from Denmark to Bamberg and was stopped by Padgett who was blowing his automobile horn and waving to the witness to stop, which he did and saw the body of decedent in the road. He turned his "pickup" and with Padgett's help put the boy in it and took him to a doctor's office. Padgett then (about seven o'clock and dark) obtained an ambulance and, on the doctor's advice, took the boy to the hospital; both the witness and Padgett also went in the ambulance. Upon witness' arrival at the scene decedent was lying about

the middle of the highway, his bicycle nearby and Padgett's car about 50 feet away. The witness saw no damage to the automobile, broken glass or other marks, and there was no light on the bicycle.

All of the evidence of probative value relating to Padgett's conduct and operation of the automobile, and of decedent and his bicycle, has been fairly summarized. It is manifest that there is nothing upon which the jury might have reasonably inferred negligence on the part of Padgett and respondent's alleged vicarious liability depended upon that as well as upon the alleged master-servant relationship. The order of nonsuit should have included both defendants and it was error to deny it as to Padgett, which would perforce have included respondent. For that reason the order under appeal will be affirmed without the necessity of consideration of the other questions which were argued. No opinion is intimated with respect to them.

Affirmed.

FISHBURNE, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., and E. H. HENDERSON, A. A. J., not participating.