661 S.E.2d 329

**Rose L. JAMES and Leroy T. James, Plaintiffs,**

v.

**KELLY TRUCKING COMPANY and
Alvino C. Hymes, Defendants.**

**No. 26447.**

Supreme Court of South Carolina.

Heard Sept. 18, 2007.

Decided March 10, 2008.

Dwight Christopher Moore, of Moore Law Firm, of Sumter, John S. Nichols, of Bluestein & Nichols, of Columbia, and S. Randall Hood, of McGowan Hood Felder & Johnson, of Rock Hill, for Plaintiffs.

Kirby D. Shealy III, of Baker Ravenel & Bender, of Columbia, for Defendants.

Chief Justice TOAL:

We accepted two certified questions from the United States District Court arising out of the situation in which a plaintiff, as a result of allegedly tortious actions by an employee, asserts causes of action for vicarious liability and negligent hiring, training, supervision, or entrustment against an employer. The first question asks whether a plaintiff in South Carolina is precluded, as a general matter, from maintaining a cause of action for negligent hiring, training, supervision, or entrustment after an employer stipulates that it is vicariously liable for its employee's negligence. In the event we answer the first question "yes," the second question asks whether

there is an exception to this general rule when the negligent hiring, training, supervision, or entrustment claim involves a properly pled and available claim for punitive damages. We answer the first question "no," and therefore do not reach the second.

## FACTUAL/PROCEDURAL BACKGROUND

Rose and Leroy James commenced this action to recover for injuries sustained in an automobile accident caused by defendant Alvino Hymes. Hymes was driving a tractor-trailer truck for his employer, defendant Kelly Trucking Company, when he failed to stop for a red light and struck Mrs. James' vehicle. The James sued both Hymes and Kelly Trucking, seeking to hold Kelly Trucking liable for Hymes' negligence through the doctrine of respondeat superior. The James also asserted a separate cause of action against Kelly Trucking for the negligent hiring, training, and supervision of Hymes based on his poor driving record. In their prayer for relief, the James sought both actual and punitive damages.

The James settled with the insurers of both Hymes and Kelly Trucking, and then sought recovery under the underinsured motorists provision (UIM) of their insurance policy. The James' insurer ("the Insurer") then assumed the defense of this case as allowed by S.C.Code Ann. § 38–77–160 (Supp. 2006). The Insurer, defending the action from the defendants' perspective, stipulated that Hymes was negligent in causing the accident and that Hymes was acting in the course and scope of his employment with Kelly Trucking when the accident occurred. The Insurer then moved for partial summary judgment, arguing that the James were precluded from proceeding with their negligent hiring claim because Kelly Trucking had admitted liability for Hymes' negligence.

It was against this backdrop that the District Court certified two questions to this Court, questions which we accepted pursuant to Rule 228, SCACR. The District Court asked:

I.   Does South Carolina law prohibit a plaintiff from pursuing a negligent hiring, training, supervision, or entrustment claim once respondeat superior liability has been admitted?

II. If the answer to question 1 is in the affirmative, does South Carolina law recognize an exception to the rule where punitive damages on the negligent hiring, training, supervision, or entrustment claim are pled and available?

## LAW/ANALYSIS

A plaintiff in a civil case may have a number of causes of action at his disposal through which he may seek to hold a tortfeasor or other responsible party liable for his injury, and this is no less the case when a plaintiff alleges that he has been injured by an employee acting in the course and scope of his employment. The doctrine of respondeat superior provides that the employer, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment. *Sams v. Arthur*, 135 S.C. 123, 128–131, 133 S.E. 205, 207–08 (1926). Such liability is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship. *Id.*

Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort. In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public. *See* RESTATEMENT (SECOND) OF TORTS § 317 (1965) (*Cited with approval in Degenhart v. Knights of Columbus*, 309 S.C. 114, 116, 420 S.E.2d 495, 496 (1992)). As this recitation suggests, the employer's liability under such a theory does not rest on the negligence of another, but on the employer's own negligence. Stated differently, the employer's liability under this theory is not derivative, it is direct.[1]

---

1. Some jurisdictions have limited the application of the theories of negligent hiring, training, supervision, and entrustment to instances

The Insurer argues that public policy justifies the preclusion of the pursuit of a negligent hiring, training, supervision, or entrustment claim against an employer when the employer admits vicarious liability. The argument goes that the admission of evidence which must be offered to prove a negligent hiring, training, supervision, or entrustment claim—evidence such as a prior driving record, an arrest record, or other records of past mishaps or misbehavior by the employee—will be highly prejudicial if combined with a stipulation by the employer that it will ultimately be vicariously liable for the employee's negligent acts. The Insurer argues that allowing a plaintiff to maintain an independent negligence cause of action against the employer will require that evidence of an employee's past negligence be admitted. This admission, in the Insurer's view, will result in the jury improperly inferring that because the employee was negligent in the past, he was negligent in causing the plaintiff's injuries. The Insurer argues that this inference will lead to a jury verdict driven more by emotion than by application of the law. Although we do not take these arguments lightly, we believe that they do not accurately characterize the concerns at play.

Primarily, we think the argument that an independent cause of action against an employer must be precluded to protect the jury from considering prejudicial evidence presumes too much. Our court system relies on the trial court to determine when relevant evidence is inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Rule 403, SCRE. Similarly, we rely on the trial court to craft instructions describing what a jury may or may not infer from a particular piece of evidence, and we grant the trial court discretion to give such instructions to the jury at the time such evidence is introduced, when charging the jury at the close of the case, or at any proper time in between. In our view, the argument that the court must entirely preclude a cause of

---

where an employee acts outside the scope of his employment, and this proposition finds some support in the comments to the Restatement. *See Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 515 (1982); *and* RESTATEMENT (SECOND) § 317 cmt. a. Our case law has not previously recognized such a distinction, and the parties in this case did not argue that we should begin to do so.

action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court's ability to judge the admission of evidence and to protect the integrity of trial, and to the jury's ability to follow the trial court's instructions.

If this fact alone did not provide a sufficient basis to reject the proposition at issue, the additional complexities involved with adopting such a rule and the proposed exception would provide the tiebreaker. To its credit, the Insurer stipulates that if a plaintiff should generally be prohibited from pursuing a negligent hiring, training, supervision, or entrustment claim once respondeat superior liability has been admitted, there should be an exception to this rule where an employer's conduct is so reckless or wanton that punitive damages are available. Although this exception appears fairly benign on the surface, we think it raises procedural problems of its own.[2]

When judging whether a plaintiff may proceed to trial on a cause of action, the trial court typically concerns itself only with whether the plaintiff's complaint states a factual basis to support a cause of action and whether, at the close of his presentation of the case, the plaintiff has presented a prima facie case supporting the allegations of his complaint. If the trial court, under the exception proposed, is asked to make any sort of a qualitative judgment regarding the employer's conduct, the exception would drastically alter our traditional concepts of the court's proper function. On the other hand, if the trial court is simply required to ask whether the plaintiff has requested an award of punitive damages, we think the adoption of a rule of preclusion might prove of little utility. As requests for punitive damages are commonplace in cases of this type, we think traveling the road the Insurer proposes would create an exception which swallows the rule.

We recognize that other jurisdictions have answered these questions differently, see, e.g., McHaffie v. Bunch, 891 S.W.2d 822, 826 (Mo.1995), but we are not resolved to agree in this instance. In our view, it is a rather strange proposition that a

---

**2.** The Insurer focuses much of its argument on the question of whether an award of punitive damages against it, standing in the shoes of the defendants, would be constitutional. Though an intriguing question, this was not a question we agreed to answer.

stipulation as to one cause of action could somehow "prohibit" completely the pursuit of another. A plaintiff may, in a single lawsuit, assert many causes of action against a defendant. The considerations limiting a plaintiff's available causes of action in the typical case are that the plaintiff must be able to demonstrate a prime facie case for each cause of action and that a plaintiff may ultimately recover only once for an injury. Thus, although the Insurer's stipulation as to vicarious liability ensures that the Insurer (standing in the shoes of Kelly Trucking) will be liable for the James' injuries, that is only the practical effect of the stipulation. Such practical considerations, in our opinion, ought not require the preclusion of a claim based upon Kelly Trucking's alleged negligence in hiring Hymes as a matter of law.

## Conclusion

■ After considering the arguments in favor of answering the first certified question in the affirmative, we are of the opinion that the largely policy-based arguments offered in support of such an answer do not justify a grant of approval to the rule proposed. Accordingly, we conclude that South Carolina law. does not prohibit a plaintiff from pursuing a negligent hiring, training, supervision, or entrustment claim once respondeat superior liability has been admitted, and we therefore answer the first certified question "no." For this reason, we need not reach the second question certified by the District Court.

PLEICONES and BEATTY, JJ., concur.

MOORE, J. dissenting in a separate opinion in which WALLER, J., concurs.

Justice MOORE dissenting:

I respectfully dissent. I would hold that a plaintiff may proceed on a negligent hiring claim when the employer admits vicarious liability only if there is evidence of gross negligence in hiring that would support an award of punitive damages.

As a general rule, most jurisdictions do not allow a separate claim against an employer where vicarious liability is admitted for the acts of an employee. *See McHaffie v. Bunch*, 891

S.W.2d 822, 826 (Mo.1995), *and cases cited therein;* Annot. 30 A.L.R.4th 838 (1984).[3] The rationale is that the employer's liability is a derivative claim fixed by a determination of the employee's negligence. Some courts following this general rule, however, will allow a negligent hiring claim to proceed when the employer's liability is alleged to include *gross* negligence in hiring; in this situation, the employer's gross negligence supports a claim beyond the employee's negligent act. *See Durben v. American Materials, Inc.,* 232 Ga.App. 750, 503 S.E.2d 618 (1998); *Lockett v. Bi–State Transit Auth.,* 94 Ill.2d 66, 67 Ill.Dec. 830, 445 N.E.2d 310 (1983); *Coville v. Ryder Truck Rental, Inc.,* 30 A.D.3d 744, 817 N.Y.S.2d 179 (2006); *see also Bruck v. Jim Walter Corp.,* 470 So.2d 1141 (Ala.1985). Finally, a minority of courts will allow a negligent hiring claim to proceed, irrespective of gross negligence on the employer's part, because they hold that negligent hiring is a separate, and not derivative, claim. *See Quinonez v. Andersen,* 144 Ariz. 193, 696 P.2d 1342 (1984); *Marquis v. State Farm Fire and Cas. Co.,* 265 Kan. 317, 961 P.2d 1213 (1998); *Lim v. Interstate System Steel Div., Inc.,* 435 N.W.2d 830 (Minn.App.1989). The majority has chosen to follow the minority rule.

Contrary to the minority view, our precedent indicates that generally a claim against an employer under a theory of respondeat superior is treated as a derivative claim dependent upon establishing the negligence of the employee. For instance, in *David v. McLeod Reg. Med. Center,* 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006), a plaintiff alleged medical malpractice by the treating physicians and vicarious liability of the hospital. We held summary judgment was properly granted in favor of the hospital because the plaintiff had failed to establish negligence by the physician-employees. Similarly, in *McCullem v. Liberty Life Ins. Co.,* 217 S.C. 565, 571, 61 S.E.2d 181, 184 (1950), we upheld a nonsuit in the plaintiff's action against an employer for injuries allegedly caused by an employee where there was no evidence of the employee's negligence. Both these cases indicate that generally an em-

---

**3.** Judge Anderson, who certified the questions here, applied this majority rule in another South Carolina case but acknowledged that this Court has never ruled on the issue. *Bowman v. Norfolk So. Rwy. Co.,* 832 F.Supp. 1014, 1021–22 (D.S.C.1993).

ployer's liability is determined by the negligence of his employee and the suit against the employer is a derivative one.[4]

In some circumstances, a plaintiff may allege the employer's negligence rises to such a level that it supports liability *in addition to* the employer's vicarious liability for the employee's negligent acts.[5] I would allow a separate cause of action in this circumstance because the cause of action against the employer is no longer simply derivative of, or dependent upon, the negligence of the employee.[6] Allowing such an action against an employer would further the deterrent purpose of punitive damages. *See Clark v. South Carolina Dep't of Pub. Safety*, 362 S.C. 377, 608 S.E.2d 573 (2005) (upholding verdict on claim of negligent supervision where there was evidence of employer's gross negligence despite jury's failure to find employee's breach of a duty); *Clark v. Cantrell*, 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (purposes of punitive damages are to punish wrongdoer and deter similar reckless, willful, wanton, or malicious conduct in the future).[7] I depart from the majority's holding because I would not allow a separate cause of action to proceed where there is no evidence of gross negligence on the employer's part.

WALLER, J., concurs.

---

**4.** Similarly, in *Longshore v. Saber Security Servs., Inc.*, 365 S.C. 554, 619 S.E.2d 5 (Ct.App.2005), the Court of Appeals speculated that a plaintiff must prove an actionable tort by the employee in order to maintain a negligent hiring action against the employer.

**5.** Defendants do not argue against adopting such a rule. Instead, they simply claim that any punitive damages award in this case is unconstitutional. This is not a question we agreed to answer in accepting the questions certified by the District Court.

**6.** For instance, here plaintiffs claim Hymes' poor driving record supports punitive damages against Kelly Trucking irrespective of any showing that Hymes himself was grossly negligent.

**7.** I note that by giving a limiting instruction, the trial court may restrict the use of evidence regarding the negligent hiring claim to avoid the potential danger of unfair prejudice from the jury's consideration of such evidence in the context of the underlying tort. For instance, here the jury could be instructed that Hymes' poor driving record is not to be considered in determining liability for the wreck but is admissible only on the negligent hiring claim. *See Lockett, supra.*